**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| MICHELLE A. M.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.: 4:25-cv-00419-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Plaintiff Michelle A. M.'s Complaint (Dkt. 1), appealing the Social Security Administration's denial of her disability claim. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order.

## I. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the Administrative Law Judge's ("ALJ") findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). If the evidence would reasonably support affirming the ALJ's decision, or reversing it, the Court may not substitute its own judgment for the ALJ's judgment. *Ferguson v. O'Malley,* 95 F.4th 1194, 1199 (9th Cir. 2024).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.* The Court may determine the ALJ's reasoning by drawing reasonable inferences and determining an implied finding from the record. *Ferguson,* 95 F. 4th at 1200.

## II. DISCUSSION

Plaintiff seeks review of the denial of her application for Disabled Adult Child ("DAC") benefits, in which she alleges disability beginning at birth based principally on scoliosis and longstanding mental health impairments, including a history of psychological trauma, abuse, and psychiatric treatment. AR 23, 26; Pl.'s Reply Br. at 1 (Dkt. 20). Because Plaintiff was required to establish disability before attaining age 22 (on May 14, 1981),[1] the relevant period is necessarily remote. AR 25. The ALJ resolved the claim at step two of the sequential process, finding that Plaintiff did not have a severe medically determinable impairment before age 22. AR 25-28. In particular, the ALJ found that scoliosis was Plaintiff's only medically determinable impairment during the relevant period, but concluded that it was non-severe because the limited

[1] Under the authority of the Social Security Act, the Social Security Administration has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22. 20 C.F.R. § 404.350(a)(5).

contemporaneous and near-contemporaneous medical evidence did not demonstrate significant functional limitations. AR 23, 26-27. Further, the medical expert testified that the degree of curvature reflected in the record was mild and would not have significantly limited Plaintiff's activities. *Id.* The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act. AR 28.

Plaintiff challenges the ALJ's decision on several interrelated grounds. She broadly contends that the ALJ (i) failed to properly evaluate her medical and psychiatric history, particularly evidence of mental health treatment; (ii) failed to adequately develop the record by obtaining records from known psychiatric and counseling providers; and relatedly (iii) mischaracterized her psychiatric history as merely "alleged" despite evidence that such treatment existed. Pl.'s Br. at 1-3 (Dkt. 17). Plaintiff also challenges the administrative process itself, asserting that irregularities surrounding her February 2024 hearing deprived her of a full and fair opportunity to present her claim. *Id*. at 2-3. The Court addresses each of these arguments in turn, but ultimately finds that none provides a basis for disturbing the ALJ's decision.

### A. The ALJ Did Not Err in Finding Plaintiff's Mental Health Conditions Were Not Medically Determinable Impairments

Plaintiff first argues that the ALJ failed to properly evaluate her medical and psychiatric history, including evidence of her historic mental health treatment. *Id*. at 1-3. Although Plaintiff does not identify with precision the particular finding she challenges, the argument appears directed principally at the ALJ's determination that Plaintiff's alleged mental health impairments, including anxiety, were not medically determinable

impairments during the relevant period – *i.e.*, before she attained age 22. AR 23-24. The ALJ acknowledged Plaintiff's allegations of significant mental health symptoms, but ultimately concluded that the evidence did not rise to a medically determinable mental impairment. *Id*.

Before considering whether an impairment is "severe" at step two of the sequential process, an ALJ must first determine whether the claimant has a medically determinable impairment at all. An impairment is medically determinable only if it results from anatomical, physiological, or psychological abnormalities demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. §§ 404.1521, 416.921. Thus, a claimant's description of symptoms – even if genuine – is not itself sufficient; the impairment must be established by objective medical evidence from an acceptable medical source. *Id*. As the Court recently explained in *Kendra Michaela M. v. Comm'r of Soc. Sec.*, 2025 WL 755395, at *4-7 (D. Idaho 2025), objective medical evidence requires observable clinical signs or laboratory findings, and an impairment cannot be established merely through a claimant's statements of symptoms, a diagnosis, or a medical opinion unsupported by such evidence. *Id*. (citing *Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005)).

Against that standard, here, the ALJ adequately considered the evidence bearing on Plaintiff's alleged mental impairments. The ALJ first acknowledged Plaintiff's allegations of significant mental health symptoms and her sister's and friend's reports of abuse and mental health difficulties. AR 23-24. He then examined whether the record contained objective medical evidence tying a mental impairment to the relevant period. It

did not. The record indicates an assault in 1993 – more than a decade after Plaintiff attained age 22 – and a post-hearing request for police reports produced no records from when Plaintiff was between ages 18 and 22. AR 24 (citing AR 1442-47, 1658-59). More importantly, the ALJ found no medical records from the relevant period documenting mental health symptoms, treatment, or clinical findings. *Id*. Although Plaintiff reported receiving mental health treatment from several providers, the ALJ observed that the available evidence contained no contemporaneous treatment notes reflecting such care or symptoms. *Id*. (ALJ stating: "What statements and other evidence that are available do not reflect any care of symptoms.").

The ALJ also considered evidence concerning treatment outside the relevant period. A 1998 letter from Araceli Yapor, M.D., referenced an earlier diagnosis of anemia but did not identify when any mental health treatment began or the conditions being treated. *Id*. (citing AR 1653-54). And although later mental health providers documented symptoms purportedly beginning around the relevant period, those providers did not begin treating Plaintiff until 1992, 2003, and 2021, respectively. *Id*. (citing AR 1561, 1565-66, 1626, 1632-33). The ALJ further considered the medical evidence closest in time to the relevant period: records from Plaintiff's 1976 hospitalization contained no reported psychiatric symptoms or signs. *Id*. (citing AR 604, 1636-38, 1639-48). While a 1984 hospitalization referenced a psychiatric referral prompted by uncooperative behavior and possible perceptual problems, it reflected no further examination or diagnosis. *Id*. In short, the ALJ did not simply disregard Plaintiff's psychiatric history. He examined the evidence offered to connect that history to the period before age 22 and

explained why it did not objectively establish a mental impairment during that period in time.

Plaintiff's briefing does little to undercut that analysis. She generally maintains that the record contains a history of psychiatric treatment and that additional records should have been considered. *See* Pl.'s Br. at 1-3 (Dkt. 17); Pl.'s Reply Br. at 1 (Dkt. 20). But she does not identify objective medical evidence from the relevant period that the ALJ overlooked or explain how any particular evidence satisfies the regulatory standard for establishing a medically determinable impairment. *Id.* As Defendant correctly points out, generalized assertions that an ALJ "mischaracterized or ignored evidence," without identifying the evidence or developing the claimed error, are insufficient to demonstrate reversible error. Def.'s Br. at 4 (citing *Garrison v. Comm'r*, 2014 WL 5018811 (D. Or. 2014); *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003)); *see also Kendra Michaela M.*, 2025 WL 755395, at *5 (unsupported allegations of error are insufficient where the claimant does not identify record evidence supporting the challenge); *Carmickle v. Comm'r of Soc. Sec.*, 553 F.3d 1155, 1161 n.2 (9th Cir. 2008) (failure to address the ALJ's findings "with any specificity" in briefing constitutes waiver).

Here, the ALJ did enough. He recognized Plaintiff's allegations and later psychiatric history, examined the evidence potentially bearing on her condition before age 22, and reasonably concluded that the record lacked the objective medical evidence necessary to establish a medically determinable mental impairment during that period. Plaintiff's disagreement with that conclusion, without identifying qualifying objective

evidence the ALJ failed to consider, does not establish reversible error. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (even where the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**B. The ALJ Adequately Developed the Record**

Plaintiff next contends that the ALJ failed to adequately develop the administrative record. Her opening brief, however, offers little more than the generalized assertion that the ALJ failed to obtain records from "known treatment sources," including prior psychiatric and counseling providers, and therefore decided her claim on an incomplete record. Pl.'s Br. at 2-3 (Dkt. 17). Plaintiff provides a bit more detail for the first time in her reply, identifying psychiatric treatment in Florida during the early 1990s and counseling with Michael Stevens, L.C.S.W., in 2003, and arguing that the ALJ should have obtained additional records from those providers. Pl.'s Reply Br. at 1 (Dkt. 20).

An ALJ has an independent duty to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation omitted). But that duty is not boundless. Rather, the ALJ's duty to further develop the record is triggered when "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (even where an opinion contains vague or imprecise language, an ALJ is not obligated to seek clarification so long as the record as a whole permits a reasoned determination). And although the ALJ retains that responsibility even when a

claimant is represented by counsel, *Tonapetyan*, 242 F.3d at 1150, a represented claimant remains responsible for presenting evidence establishing disability. *Mayes*, 276 F.3d at 459; *see also* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are [ ] disabled."). The relevant question is therefore whether the evidence before the ALJ was ambiguous or inadequate to permit a proper evaluation – not simply whether additional evidence might conceivably have existed.

The circumstances here do not demonstrate such a deficiency. Plaintiff was represented by counsel at the July 2024 hearing, and, at that time, the ALJ afforded counsel an opportunity to develop Plaintiff's allegations concerning the progression of her impairments. AR 64-70. Indeed, the ALJ went beyond the existing documentary record by calling a medical expert to address Plaintiff's condition during the period at issue. AR 51-63.

Nor did the ALJ simply close the record to additional evidence. When Plaintiff submitted or identified evidence fewer than five business days before the hearing, the ALJ expressly found the regulatory requirements satisfied and admitted the additional evidence into the record. AR 20, 44-45. These efforts undermine Plaintiff's generalized suggestion that the ALJ failed to meaningfully develop the record.

More fundamentally, the additional evidence Plaintiff identifies does not expose a material gap concerning the relevant period. To qualify for DAC benefits, Plaintiff had to establish disability before May 14, 1981, when she turned 22. AR 22 (citing 20 C.F.R. § 404.350(a)(5)). Yet, the treatment she emphasizes in her reply occurred many years later. The Florida psychiatric treatment allegedly occurred in the early 1990's; Dr.

Stevens treated Plaintiff in 2003 and 2004. Pl.'s Reply Br. at 1 (Dkt. 20). As discussed above, the ALJ was aware of similar, later treatment and considered the extent to which it shed light on Plaintiff's condition during the relevant period. *Supra*. Although several providers retrospectively reported that Plaintiff's symptoms began around that time, none actually treated Plaintiff before she turned 22 – their treatment relationships began much later. Thus, the additional records Plaintiff now says should have been obtained concern treatment after the relevant period. *See, e.g.*, AR 27 (ALJ considering Dr. Stevens's opinions and making this very point). Without some indication that those records would materially clarify Plaintiff's condition before age 22, their absence does not render the record ambiguous or inadequate for adjudication.

On this record, the Court is not persuaded that the ALJ failed to satisfy his duty to develop the record. Plaintiff was represented by counsel, the ALJ solicited and admitted additional evidence, called a medical expert specifically to assist in evaluating the remote period at issue, and considered the later treatment evidence Plaintiff now emphasizes. Most critically, Plaintiff has not identified an ambiguity or inadequacy concerning her condition before age 22 that required the ALJ to obtain still more records. The ALJ's duty to develop the record does not relieve Plaintiff of her ultimate burden to establish disability. *See Mayes*, 276 F.3d at 459-60. Accordingly, Plaintiff has not demonstrated reversible error on this ground.

**C. The ALJ Did Not Materially Mischaracterize the Record**

Plaintiff next argues that the ALJ mischaracterized the record by referring to her history of mental health treatment as "allegations." Pl.'s Brief at 3 (Dkt. 17). According

to Plaintiff, that characterization improperly suggested that her psychiatric history did not exist despite evidence of later mental health treatment. *Id*. Plaintiff identifies no authority, however, suggesting that an ALJ commits reversible error merely by referring to a claimant's reported medical history or symptoms as "allegations." That terminology is not unusual in the Social Security context; it simply distinguishes what a claimant asserts from what the ALJ ultimately finds established by the medical evidence.

In any event, Plaintiff's argument conflates two distinct questions. The ALJ did not find that Plaintiff had no history of mental health symptoms or treatment. To the contrary, he expressly acknowledged Plaintiff's repeated history of significant mental health symptoms, her allegations of treatment from multiple providers, the third-party reports describing abuse and mental health problems, and records reflecting later psychiatric treatment. AR 23-24. As discussed above, the existence of reported symptoms or even later treatment is distinct from whether the evidence in the record satisfies the regulatory requirements for establishing a medically determinable impairment before age 22.

Describing portions of Plaintiff's psychiatric history as "allegations" does not show that the ALJ ignored or misunderstood that history. It reflects the posture in which the ALJ considered the evidence: Plaintiff alleged that her mental health difficulties extended into the relevant period, and the ALJ evaluated whether the available medical evidence substantiated that assertion. He concluded that it did not. Plaintiff's disagreement with the conclusion provides no independent basis for reversal.

**D. Plaintiff Received a Full and Fair Hearing**

Finally, Plaintiff argues that irregularities surrounding the administrative hearing deprived her of a full and fair opportunity to present her claim. Pl.'s Br. at 3 (Dkt. 17); Pl.'s Reply Br. at 2 (Dkt. 20). The record does not support that contention. Plaintiff's first hearing was noticed for February 28, 2024, at 10:15 a.m., by videoconference. AR 191-202. Despite Plaintiff's assertion that she was forced to wait "several hours," the hearing transcript reflects that the proceeding began at 10:27 a.m. – only 12 minutes after its scheduled start time. AR 85; *see also* Def.'s Br. at 3 (Dkt. 19).

The February hearing did not even result in an adjudication of Plaintiff's claim. Plaintiff was unrepresented at the time, and the ALJ adjourned the proceeding to give her an opportunity to retain counsel, obtain input from a medical consultant concerning the time period at issue, and gather additional documentation supporting her claim. AR 105-27. Plaintiff did just that. By the time of the second hearing on July 11, 2024, she was represented by counsel, and that hearing proceeded on time. AR 40. The ALJ also called a medical expert to testify concerning Plaintiff's condition during the relevant time period. AR 51-63. Plaintiff's counsel was afforded the opportunity to question that expert and to develop the record concerning the progression of Plaintiff's impairments, including the extent to which her later medical history shed light on her condition before age 22. AR 64-70.

So, whatever confusion may have initially occurred at the Social Security office on February 28, 2024, did not deprive Plaintiff of an opportunity to be heard. The first hearing began with minimal delay and was ultimately adjourned for Plaintiff's benefit so that she could obtain counsel and further develop her case. She then received a second

hearing at which she was represented, could present evidence and explain the progression of her impairments, and could question the medical expert whose testimony bore directly on the dispositive period. That process afforded Plaintiff a full and fair opportunity to present her claim. Accordingly, the circumstances surrounding the February hearing provide no basis for reversal.

## III. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner be AFFIRMED, that Plaintiff's Complaint (Dkt. 1) is DENIED, and this action be DISMISSED in its entirety, with prejudice.

DATED: September 16, 2026

____________________________
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge